Filed 4/1/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B289160 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA078936) |
| v. | |
| TRAVIS SEPULVEDA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Martin L. Herscovitz, Judge. Affirmed with directions.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Noah P. Hill and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Travis Sepulveda was convicted following a jury trial of one count of first degree murder, three counts of attempted

willful, deliberate and premeditated murder and one count of shooting from a motor vehicle with true findings he had personally discharged a firearm causing great bodily injury or death when committing each of the offenses and the offenses had been committed for the benefit of a criminal street gang. He was sentenced to an aggregate indeterminate state prison term of 90 years to life.

On appeal Sepulveda, who was 18 years old at the time of the attempted murders and 21 years old when he committed murder, contends the cause should be remanded for a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) because his counsel stipulated, without his consent, to limit information regarding youth-related mitigating factors to a written submission following the sentencing hearing. That procedure, he argues, violated his constitutional rights to due process, to present a defense, to cross-examine witnesses and to be present at a critical stage of the criminal proceeding. Sepulveda also contends it was "per se ineffective assistance of counsel" not to present any of the available mitigating evidence at the sentencing hearing.[1] We affirm.

---

[1] Sepulveda also argues, and the Attorney General agrees, although the clerk's minute order correctly records the court's oral pronouncement of judgment, the abstract of judgment does not reflect that a consecutive sentence was imposed for the attempted willful, deliberate and premeditated murder charged in count 2 and that concurrent sentences were imposed for the attempted willful, deliberate and premeditated murders charged in counts 3 and 4. The abstract of judgment does state count 7, shooting from a motor vehicle, was stayed pursuant to Penal Code section 654. We order the abstract of judgment corrected. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 186-187 [appellate

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Commitment Offenses*

Testimony at trial established that on November 14, 2011 Sepulveda, a member of the West Side Reseda gang, and two other gang members drove down a street in the territory of the Canoga Park Alabama gang, one of the West Side Reseda gang's rivals. Sepulveda from the front passenger seat and his confederate sitting in the rear seat fired weapons at a group of people standing on the sidewalk, including Manual Hernandez, Cesar Martinez and Angel Martinez. Hernandez and Cesar Martinez were struck by the gunfire; both survived, but Martinez's injuries confined him to a wheelchair.

On August 16, 2014 Sepulveda issued a gang challenge during a party to John Medina, who was wearing a hat associated with a rival gang. Sepulveda ordered Medina to take off his hat. Medina refused and punched Sepulveda. Sepulveda pulled out a gun and shot Medina and then shot Medina a second time as he attempted to run away. Medina died from the two gunshot wounds.

Sepulveda did not testify and presented no defense at trial.

On January 20, 2017 the jury convicted Sepulveda of the premeditated murder of Medina (Pen. Code, §§ 187, 189, subd. (a)), the attempted willful, deliberate and premeditated murder of Hernandez, Cesar Martinez and Angel Martinez (Pen. Code, §§ 187, 664, subd. (a)) and shooting from a motor vehicle in connection with the November 14, 2011 incident (Pen. Code, 12034, subd. (c)). The jury also found true special

---

court may correct clerical errors on its own motion or upon application of the parties].)

allegations that Sepulveda or a principal had used and discharged a firearm causing great bodily injury or death when committing each of the offenses (Pen. Code, § 12022.53, subds. (b), (c), (d) & (e)) and that each offense had been committed for the benefit of, at the direction of, or in association with a criminal street gang (Pen. Code, § 186.22).

2. *Sentencing Proceedings*

The People submitted a sentencing memorandum on March 17, 2017. Citing a number of aggravating factors, including that the crimes involved great violence and a high degree of callousness (Cal. Rules of Court, rule 4.421(a)) and Sepulveda's prior convictions and sustained juvenile petitions were of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)), and describing no circumstances in mitigation, the People recommended imposition of an aggregate indeterminate state prison term of 170 years to life. The memorandum explained Sepulveda, who was 18 years old when he committed the attempted murders and 21 years old when he murdered Medina, would be entitled to a youth offender parole hearing and eligible for release on parole under Penal Code section 3051 after serving 25 years in state prison.[2]

Following several continuances of the sentencing hearing at Sepulveda's request, on July 18, 2017 the trial court appointed

---

[2] In 2017 the relevant portion of Penal Code section 3051 applied to individuals who were under 23 years old at the time of his or her controlling offense. (Stats. 2015, ch. 471, § 1.) Effective January 1, 2018 the provisions for youth offender parole hearings were extended to individuals who had commited specified crimes when they were 25 years old or younger. (Stats. 2017, ch. 684, § 1.5.)

4

Amy York, a capital mitigation investigation expert, to assist Sepulveda's counsel with preparation of material that would ultimately be presented at Sepulveda's youth offender parole hearing, referred to by the court and counsel as a "*Franklin* package." On August 29, 2017 Sepulveda moved once again to continue the sentencing hearing. His counsel explained he had provided York with various documents relevant to her investigation and she had interviewed Sepulveda, but York was waiting for additional records and still needed to interview Sepulveda's relatives. York estimated she needed an additional two months to complete her work. Sepulveda's motion was granted. The sentencing hearing was thereafter delayed several more times while York continued her work. On February 1, 2018 Sepulveda's counsel asked for a final continuance to February 15, 2018 for sentencing.

At the outset of the hearing on February 15, 2018, the court stated, "It was stipulated between the parties that you're going to submit to the court documentation on his eligibility, factors to be considered for eligibility of parole, when he's eligible for parole, at a future date in the form of documentary evidence that would be part of the court file and not subject to live testimony or cross-examination." Defense counsel responded, "That's correct" and estimated the material would be submitted in "about three weeks or a month." The prosecutor also confirmed the stipulation.

After the court heard victim impact statements, it asked defense counsel if he had anything to present. Counsel responded, "Not at this time."

The court then commented, "The Legislature passed a law that says that at some point, for anyone who is 25 years or younger, is eligible for parole. There is nothing the court can do

5

to prevent that eligibility. But based on what I know about Mr. Sepulveda and his proven track record of violence, killing and attempt to kill, he will be a danger for the rest of his life and should never be released from custody."

The court sentenced Sepulveda to an aggregate indeterminate state prison term of 90 years to life: 25 years to life for the first degree murder of Medina, plus a consecutive term of 25 years to life for the Penal Code section 12022.53, subdivision (d), firearm enhancement related to that count;[3] a consecutive term of 15 years to life for the attempted willful, deliberate and premeditated murder of Cesar Martinez, plus a consecutive term of 25 years to life for the section 12022.53, subdivision (d), firearm enhancement related to that count; and concurrent terms of 40 years to life for the attempted willful, deliberate and premeditated murders of Hernandez and Angel Martinez with related firearm enhancements. Sentence for the drive-by shooting was stayed pursuant to Penal Code section 654.

On April 4, 2018 Sepulveda's defense counsel filed a lengthy memorandum on youth-related mitigating factors, supported by psychological and educational assessments, school records and interviews with Sepulveda's family.[4] Neither

---

[3] Acknowledging it had discretion under newly enacted legislation to strike the Penal Code section 12022.53 firearm enhancements found true by the jury, the court stated, "[B]ased on what I heard in this case and the defendant's record of possession of weapons and guns between the two incidents, I see no reason in the interest of justice to strike it."

[4] We take judicial notice of "Defense Counsel's Brief and Exhibits Relevant to Sentenced Defendant and Youth Offender Parole Hearing," and the superior court's April 4, 2018 minute

Sepulveda nor the prosecutor was present in court when the memorandum was filed. In his opening brief Sepulveda states the material "indicated appellant's childhood trauma and stress contributed to his recklessness and disregard of consequences, and made him vulnerable to gang associations."

## DISCUSSION

1. *Senate Bill No. 260,* Franklin *and Evidence Preservation Proceedings for Youth Offenders*

In *Graham v. Florida* (2010) 560 U.S. 48, 74 [130 S.Ct. 2011, 175 L.Ed.2d 825] (*Graham*) the United States Supreme Court, emphasizing a juvenile offender's "capacity for change and limited moral culpability," held it violated the Eighth Amendment's prohibition of cruel and unusual punishment to impose a sentence of life without parole (LWOP) on a juvenile offender who did not commit homicide.[5] Two years later in *Miller v. Alabama* (2012) 567 U.S. 460 [132 S.Ct. 2455, 183 L.Ed.2d 407] (*Miller*), the Supreme Court held it also violated the Eighth Amendment to impose a mandatory LWOP sentence on a juvenile in a homicide case because that penalty "precludes consideration of [the juvenile's] chronological age and its hallmark features— among them, immaturity, impetuosity, and failure to appreciate risks and consequences." (*Id.* at p. 477.) Shortly after *Miller*, the California Supreme Court in *People v. Caballero* (2012)

---

order indicating the memorandum and exhibits were filed on that date.

[5] Five years before its decision in *Graham* the Supreme Court in *Roper v. Simmons* (2005) 543 U.S. 551, 578 [125 S.Ct. 1183, 161 L.Ed.2d 1] had held no individual may be executed for an offense committed when he or she was a juvenile.

7

55 Cal.4th 262, 268 (*Caballero*), held *Graham*'s Eighth Amendment analysis applies to sentences that are the "functional equivalent of a life without parole sentence," including Caballero's term of 110 years to life.[6]

To bring juvenile sentencing in California into conformity with *Graham*, *Miller* and *Caballero*, the Legislature enacted Senate Bill No. 260 (2013-2014 Reg. Sess.), effective January 1, 2014, adding sections 3051 and 4801, subdivision (c), to the Penal Code. These provisions require the Board of Parole Hearings (Board), with certain limited exceptions, to conduct a youth offender parole hearing no later than a juvenile offender's 25th year of incarceration (and at earlier points depending on the offender's "controlling offense") (Pen. Code, § 3051, subd. (b)) and, when considering parole eligibility for these youth offenders, to "give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity" (Pen. Code, § 4801, subd. (c)).

Because these provisions for a youth offender parole hearing meant that Tyris Franklin, sentenced to a mandatory term of 50 years to life for shooting and killing another teenager when Franklin was 16 years old, was "now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration," his sentence was "neither LWOP nor its functional equivalent." (*Franklin*, *supra*, 63 Cal.4th at pp. 270-280.) Accordingly, the Court ruled, "no *Miller* claim

---

[6]     In *Franklin*, *supra*, 63 Cal.4th at page 276 the California Supreme Court extended *Miller* to mandatory sentences for homicide offenses that are the functional equivalent of LWOP.

arises here. The Legislature's enactment of Senate Bill No. 260 has rendered moot Franklin's challenge to his original sentence under *Miller*." (*Id*. at pp. 279- 280; see *id*. at p. 281 [Penal Code section 3051 "effectively reforms the parole eligibility date of a juvenile offender's original sentence so that the longest possible term of incarceration before parole eligibility is 25 years"].)

Because Franklin's constitutional challenge to his sentence had been mooted by the Legislature's provision through statute for a youth offender parole hearing during his 25th year of incarceration, the Court held, there was no need to resentence him; his two consecutive 25-year-to-life sentences remained valid. Nonetheless, the Court continued, "In directing the Board to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner' ([Pen. Code,] § 4801, subd. (c)), the statutes also contemplate that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate the Board's consideration." (*Franklin*, *supra*, 63 Cal.4th at p. 283.) However, assembling information about the individual before the crime, the Court explained, "is typically a task more easily done at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away. . . . Consideration of 'subsequent growth and increased maturity' implies the availability of information about the offender when he was a juvenile." (*Id*. at pp. 283-284.)

Since it was not clear whether Franklin had been afforded a sufficient opportunity to make a record of information relevant

9

to his eventual youth offender parole hearing, the Court remanded the matter for the trial court to provide that opportunity if necessary. (*Franklin*, *supra*, 63 Cal.4th at p. 284; see *id.* at p. 286 ["[s]o long as juvenile offenders have an adequate opportunity to make a record of factors, including youth-related factors, relevant to the eventual parole determination, we cannot say at this point that the broad directives set forth by Senate Bill No. 260 are inadequate to ensure that juvenile offenders have a realistic and meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation"].) The Court authorized Franklin to place on the record "any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing" (*id.* at p. 284), but also recognized the right of the prosecution to submit "any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Ibid.*)

2. *Counsel's Stipulation To File the* Franklin *Package After the Sentencing Hearing and Without Presentation of Live Testimony Did Not Violate Sepulveda's Constitutional Rights*

In his opening brief Sepulveda argues presentation of youth-related mitigating information as contemplated by *Franklin* is, in essence, an aspect of the sentencing hearing and, as such, directly implicates a defendant's fundamental due process rights, including to be present at the hearing, to present a defense and to cross-examine witnesses—rights that cannot be waived by counsel without the client's consent. (See generally *People v. Farwell* (2018) 5 Cal.5th 295, 300-301.) Because he did not expressly agree to the procedure adopted by his counsel to

make a record of relevant youth-related factors,[7] Sepulveda contends he is entitled to a remand for a *Franklin* hearing.

Sepulveda's argument misperceives the nature of the *Franklin* proceeding. As the Supreme Court emphasized in *In re Cook* (2019) 7 Cal.5th 439 (*Cook*), "[T]he proceeding we outlined in *Franklin* derives from the statutory provisions of sections 3051 and 4801," not the defendant's due process or other constitutional rights. (*Cook*, at p. 459; see *People v. Rodriguez* (2018) 4 Cal.5th 1123, 1132 ["[w]e expressed no view in *Franklin*, and we need not express any view here, on whether such a remand is constitutionally required"].) Indeed, "a *Franklin* proceeding is unrelated to the validity of the defendant's sentence." (*Cook*, at p. 451.) The purpose of providing an opportunity to present youth-related factors mitigating culpability is not to influence the trial court's discretionary sentencing decisions but to preserve information relevant to the defendant's eventual youth offender parole hearing. (See *Rodriguez*, at p. 1131;[8] *Franklin*, *supra*, 63 Cal.4th at pp. 283-284.)

---

[7]    As discussed, Sepulveda was present in court and did not object when the court summarized the parties' stipulation that his counsel would submit the information "in the form of documentary evidence that would be part of the court file and not subject to live testimony or cross-examination."

[8]    The *Rodriguez* Court acknowledged that, prior to enactment of Senate Bill No. 260, some information regarding a youthful defendant's background circumstances might be introduced at the sentencing hearing, but recognized "he or she would not have had reason to know that the subsequently enacted legislation would make such evidence particularly

11

Moreover, as held in *Rodriguez* and reiterated in *Cook*, the trial court may "exercise its discretion to conduct this process efficiently, ensuring that the information introduced is relevant, noncumulative, and otherwise in accord with the governing rules, statutes, and regulations." (*People v. Rodriguez, supra*, 4 Cal.5th at p. 1132; accord, *Cook, supra*, 7 Cal.5th at p. 459.) Explaining the scope of the trial court's discretion, the *Cook* Court stated, "The court may, for example, require an offer of proof regarding the evidence the offender seeks to present, so that it can determine whether such evidence is relevant to youth-related factors and meaningfully adds to the already available record. It may also determine whether testimony is 'appropriate' [citation], or if other types of evidentiary submissions will suffice." (*Cook*, at p. 459.)

The trial court properly exercised its discretion here, accepting defense counsel's proposal, with the agreement of the prosecutor, to submit the relevant information in written form without live testimony or cross-examination. This procedure did not violate Sepulveda's constitutional rights.

---

relevant in the parole process. Without such notice, any opportunity to introduce evidence of youth-related factors is not adequate in light of the purpose of Senate Bill No. 260." (*Rodriguez, supra*, 4 Cal.5th at p. 1131.)

3. *Sepulveda's Ineffective Assistance of Counsel Claim Should Be Presented in a Petition for Writ of Habeas Corpus*

To establish ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and counsel's deficient performance was prejudicial, that is, there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*People v. Rices* (2017) 4 Cal.5th 49, 80; *People v. Mickel* (2016) 2 Cal.5th 181, 198; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-692 [104 S.Ct. 2052, 80 L.Ed.2d 674].)

"On direct appeal, if the record "'sheds no light on why counsel acted or failed to act in the manner challenged,'" we must reject the claim "'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.'"" (*People v. Caro* (2019) 7 Cal.5th 463, 488; accord, *People v. Mickel*, *supra*, 2 Cal.5th at p. 198 ["a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ""no rational tactical purpose"" for an action or omission"].) Accordingly, "except in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal." (*People v. Lopez* (2008) 42 Cal.4th 960, 972; see *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [appellate court should not find ineffective assistance of counsel unless all facts relevant to that claim have been developed in the record]; *People v. Avena* (1996) 13 Cal.4th 394, 419 ["'[w]here the record does not illuminate the

13

basis for the challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a petition for habeas corpus"], italics omitted.)

Emphasizing that the trial court had discretion to strike the two consecutive 25-year-to-life firearm enhancements it imposed, thereby potentially reducing his sentence from an aggregate indeterminate term of 90 years to life to 40 years to life, Sepulveda contends his counsel provided constitutionally deficient assistance by failing to present during the February 15, 2018 sentencing hearing any of the information mitigating culpability contained in the *Franklin* memorandum filed on April 4, 2018.  (Alternatively, Sepulveda suggests defense counsel should have requested yet another continuance of the sentencing hearing, already delayed more than a year, so that the memorandum would be completed and filed prior to sentencing.) The record on appeal, however, does not explain why counsel chose to proceed in this fashion.  "Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable."  (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198.)

Nor has Sepulveda shown "affirmative evidence that counsel could have had 'no rational tactical purpose' for these decisions."  (*People v. Mickel*, *supra*, 2 Cal.5th at p. 200.)  To the contrary, it is at least plausible that defense counsel recognized under Penal Code section 3051, subdivision (b)(3), Sepulveda's eventual youth offender parole hearing would occur during his 25th year of incarceration whether his aggregate indeterminate sentence was 40 years to life or 90 years to life, and believed

under those circumstances Sepulveda would benefit more by an agreement with the prosecution to have the *Franklin* memorandum presented without contemporaneous challenge or contradiction than by introducing that material at the sentencing hearing in the remote chance the trial court would exercise its discretion to strike the firearm enhancements. At the very least, this is not a matter we can resolve on direct appeal.

## DISPOSITION

The judgment is affirmed. The abstract of judgment is ordered corrected to reflect the sentence on count 2 is to be served consecutively and the sentence on counts 3 and 4 concurrently to the sentence on count 1.


PERLUSS, P. J.


We concur:



SEGAL, J.



FEUER, J.


15