Filed 5/17/18

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S239713 |
| v. | ) | |
| | ) | Ct.App. 5 F065807 |
| JESUS MANUEL RODRIGUEZ AND EDGAR OCTAVIO BARAJAS, | ) ) | |
| | ) | Stanislaus County |
| Defendants and Appellants. | ) | Super. Ct. Nos. |
| | ) | 1085319 and 1086536 |
| _____ | ) | |

Defendants Edgar Octavio Barajas and Jesus Manuel Rodriguez were convicted in a joint trial of murder, conspiracy to commit murder, and participation in a criminal street gang. The trial court sentenced each defendant to mandatory terms amounting to 50 years to life. We granted review to consider (1) whether the accomplice testimony in this case was sufficiently corroborated in light of *People v. Romero and Self* (2015) 62 Cal.4th 1, 36 (*Romero and Self*), and (2) whether defendants' constitutional challenges to their 50-years-to-life sentences were rendered moot by recent legislation making them eligible for a youth offender parole hearing during their 25th year of incarceration (Pen. Code, §§ 3051, 4801), even though their cases were not remanded to the trial court to determine whether they had an adequate opportunity to make a record of factors relevant to their eventual parole determinations. (See *People v. Franklin* (2016) 63 Cal.4th 261, 283–284, 286 (*Franklin*).)

With respect to Barajas, the Attorney General concedes that the accomplice testimony was not sufficiently corroborated and that his convictions must be reversed. We agree with the Attorney General and therefore reverse Barajas's convictions and remand with an order to enter a judgment of acquittal. Rodriguez raises only the second issue, and we conclude he is entitled to relief. We remand his case to the Court of Appeal to direct the trial court to provide him with an opportunity to make a record of information that Penal Code sections 3051 and 4801 deem relevant at a youth offender parole hearing. As in *Franklin*, Rodriguez's constitutional challenge to his 50-years-to-life sentence is moot in light of the enactment of those statutes and our remand to facilitate proper discharge of the Board of Parole Hearings' obligations under those statutes.

## I.

On May 26, 2004, Ernestina Tizoc was killed in a drive-by shooting in Oregon Park in Modesto. The park was known as a hangout for members of the Norteño gang. Witnesses saw a white Chevrolet Blazer with broken windows drive slowly around the park and approach a gazebo where an afterschool program was being held. Before the shots were fired at Tizoc, the occupants of the Blazer made gang signs and yelled a cry for a rival gang, the Sureños.

Officers arrived at the scene and received information that people at a residence on Thrasher Avenue were involved in the shooting. Officers went to the location and detained Rodriguez, Barajas, Mario Garcia, and Louis Acosta. At the time, Rodriguez was 15 years old, and Barajas was 16 years old. At trial, a gang expert working with the district attorney's office testified that he believed all of the arrestees were Sureño gang members. In a subsequent search of the Thrasher Avenue residence, an officer found mail addressed to Acosta, gang-related drawings, and two .22-caliber bullets. Later that day, another officer found the white Blazer in an alley.

Garcia, who had been in the Blazer, testified that he, Rodriguez, Barajas, and two others passed through Oregon Park looking for Norteños, apparently to retaliate for prior aggressions by the Norteños. Garcia thought some of the people by the gazebo were Norteños because they were wearing red. He testified that as the Blazer approached the gazebo, Barajas shouted "puro Sur" and fired multiple shots. When Barajas stopped shooting, the Blazer sped away. Tizoc was hit by the gunshots and died from her injuries.

Rodriguez and Barajas were charged with willful, deliberate, and premeditated murder, conspiracy to commit murder, and active participation in a criminal street gang. The information alleged, as to the murder and conspiracy counts, that at least one principal intentionally and personally used a firearm, causing great bodily injury or death. The information also alleged that the offenses were committed for the benefit of a criminal street gang.

Both defendants entered pleas of not guilty and denied all enhancement allegations. A jury convicted Barajas and Rodriguez of first degree murder (Pen. Code, § 187) and found that the crime was committed for the benefit of a criminal street gang (*id.*, § 186.22, subd. (b)). (All undesignated statutory references are to the Penal Code.) The jury also found that a principal discharged a firearm causing death (§ 12022.53, subds. (d), (e)). Defendants were also convicted of conspiracy to commit murder (§§ 182, 187) and active participation in a criminal street gang (§ 186.22, subd. (a)). On September 12, 2012, the trial court sentenced each defendant to an aggregate term of 50 years to life based on a mandatory term of 25 years to life for first degree murder and a mandatory consecutive term of 25 years to life for the firearm enhancements. The trial court did not expressly consider any youth-related factors at sentencing.

Defendants appealed their convictions on grounds of prosecutorial failure to preserve exculpatory evidence, juror misconduct, insufficient corroboration of

3

accomplice testimony, and instructional error. They also claimed their sentences of 50 years to life violate the Eighth Amendment to the United States Constitution. The Court of Appeal affirmed the judgments. We granted review and, after holding the case, transferred it to the Court of Appeal for reconsideration in light of *Franklin*, *supra*, 63 Cal.4th 261 and *Romero & Self*, *supra*, 62 Cal.4th 1. The Court of Appeal again affirmed the judgments, and we again granted review.

## II.

Barajas claims that the evidence was insufficient to support his convictions on all three counts because the only evidence connecting him to the crimes was uncorroborated accomplice testimony. He contends that his convictions should be reversed and a judgment of acquittal should be entered on all charges. The Attorney General concedes that the accomplice testimony was insufficiently corroborated. After reviewing the evidence presented at trial, we agree with the Attorney General, reverse Barajas's convictions, and order the entry of a judgment of acquittal. Rodriguez concedes that the accomplice testimony against him was sufficiently corroborated.

Section 1111 states: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." This statute reflects the Legislature's determination that " 'because of the reliability questions posed by' " accomplice testimony, such testimony " 'by itself is insufficient as a matter of law to support a conviction.' " (*People v. Najera* (2008) 43 Cal.4th 1132, 1137.) "Thus, for the jury to rely on an accomplice's testimony about the circumstances of an offense, it must find evidence that, ' "without aid from the accomplice's testimony, tend[s] to connect the defendant with the crime." ' " (*Romero and Self*, *supra*, 62 Cal.4th at p. 32.)

4

" 'The entire conduct of the parties, their relationship, acts, and conduct may be taken into consideration by the trier of fact in determining the sufficiency of the corroboration.' " (*Id.*, quoting *People v. Rissman* (1957) 154 Cal.App.2d 265, 278.)

Barajas contends that the only evidence that specifically implicated him in the crime was the uncorroborated accomplice testimony of Garcia and Rodriguez. Barajas is correct: None of the other evidence, including the eyewitness testimony about the shooting or the physical evidence of the murder weapon and shell casings fired from the weapon, tended to connect Barajas to the commission of the crime. The only other evidence against Barajas was that he was a Sureño gang member, but as the Attorney General explains, "the gang expert's testimony failed to personally connect Barajas to the shooting itself, the physical evidence, the accomplices and victims involved, the vehicle used by the perpetrators, or any particular location related to the crime such as Oregon Park, [the Thrasher Avenue] residence, and the areas where physical evidence was found."

The Court of Appeal observed that the nonaccomplice evidence did corroborate aspects of the accomplice testimony offered against Barajas. But that is not enough. The nonaccomplice evidence must corroborate aspects of the accomplice testimony that " ' "tend[ed] to connect the defendant with the crime." ' " (*Romero and Self*, *supra*, 62 Cal.4th at p. 32.) Such corroborating nonaccomplice evidence was absent here. Our review of the record confirms what the Attorney General recounts in his briefing: "The non-accomplice evidence did not tend to connect Barajas to the accomplice, his codefendant, or the victims. Nor did it tend to connect Barajas to the Chevy Blazer used during the shooting, the murder weapon, or any of the bullets and shall [sic] casings that were recovered. There was no evidence tending to connect Barajas to Oregon Park, the . . . Thrasher residence, or any of the locations where relevant evidence was

5

found.  There was also no evidence that Barajas had been involved in any of the prior acts of violence committed by the Norteños against the Sureños that preceded the charged crimes.  And other than fights at school, the evidence did not show that Barajas had committed acts of violence against Norteños similar to the shooting at the park.  Unlike in [*People v. Szeto* (1981) 29 Cal.3d 20], there was no evidence establishing a personal motive or opportunity to commit the charged crimes.  The corroborating evidence that was presented could do no more than establish the crimes occurred and raise a suspicion against every Sureño gang member in Stanislaus County."

The Attorney General acknowledges that this case is analogous to *Romero and Self*.  In that case, a jury convicted Self of a robbery based on the testimony of an accomplice, Munoz, as to the circumstances of the crime.  Other than Munoz's testimony, there was no other evidence tying Self to the robbery.  Although Self's codefendant, Romero, used Self's shotgun during the robbery, there was no dispute it was Romero, not Self, who held the shotgun.  The victim did not testify to seeing Self.  We therefore reversed Self's conviction as to that robbery.  (*Romero and Self*, *supra*, 62 Cal.4th at pp. 35–37.)

We hold that the accomplice testimony against Barajas was not sufficiently corroborated and that his convictions must be reversed.  Because reversal of his convictions is based on insufficiency of the evidence, the double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15 of the California Constitution mandate that Barajas be acquitted of the charges.  (*Monge v. California* (1998) 524 U.S. 721, 729 ["We have held that where an appeals court overturns a conviction on the ground that the prosecution proffered insufficient evidence of guilt, that finding is comparable to an acquittal, and the Double Jeopardy Clause precludes a second trial."]; *People v. Seel* (2004) 34 Cal.4th 535, 542, citing *Monge*, 524 U.S. at p. 729 [same rule under the double

jeopardy clause of the California Constitution]; *People v. Belton* (1979) 23 Cal.3d 516, 526–527 [defendant was entitled to judgment of acquittal where prosecution's case failed to satisfy section 1111]; *People v. Pedroza* (2014) 231 Cal.App.4th 635, 660 [trial court's determination that prosecution's case failed to satisfy section 1111 was a finding of insufficient evidence to sustain conviction].) Accordingly, we remand Barajas's case to the Court of Appeal to enter a judgment of acquittal on the charges against him.

### III.

Rodriguez contends that he was not provided an adequate opportunity to make a record of information relevant to a future youth offender parole hearing and that he is entitled to a remand under *Franklin*. As a preliminary matter, the Attorney General argues that we may not grant Rodriguez relief on this claim because he did not file a petition for review in this court. Our grant of review gave us jurisdiction over the cause, including Rodriguez's claim, and we exercise our jurisdiction to consider it. (Cal. Const., art. VI, § 12, subd. (b); see Rules of Court, rule 8.512(b)(1); Advisory Com. com., subd. (b) foll. Rules of Court, rule 8.528.) We note, however, that while we have authority to consider such claims, we do not do so as a matter of course; in general, parties are advised to file a petition for review on claims that may entitle them to relief in this court.

In *Franklin*, we held that a juvenile offender's Eighth Amendment challenge to his 50-years-to-life sentence was rendered moot by the enactment of Senate Bill No. 260 (2013–2014 Reg. Sess.) (Senate Bill No. 260), which created youth offender parole hearings and made Franklin eligible for such a hearing during his 25th year of incarceration. (*Franklin*, *supra*, 63 Cal.4th at p. 280; see §§ 3051, subd. (b)(3), 4801, subd. (c).) Because the Board of Parole Hearings had not yet crafted regulations applicable to youth offender parole hearings when we decided *Franklin*, we did not opine on "whether and, if so, how existing suitability

7

criteria, parole hearing procedures, or other practices must be revised to conform to the dictates of applicable statutory and constitutional law." (*Franklin*, at p. 286.) We could not say at that point that the enacted legislation was inadequate to provide juvenile offenders a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation "[s]o long as juvenile offenders have an adequate opportunity to make a record of factors, including youth-related factors, relevant to the eventual parole determination." (*Ibid.*; see *id.* at p. 283 ["In directing the Board to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner' (§ 4801, subd. (c)), the statutes also contemplate that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate the Board's consideration."].) Because Franklin was sentenced before the passage of Senate Bill No. 260, we remanded the case for the trial court to determine whether he was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing. (*Franklin*, at p. 284.)

The Court of Appeal, relying on *Franklin*, held that Rodriguez's Eighth Amendment challenge to his sentence was moot in light of his eligibility for a youth offender parole hearing during his 25th year of incarceration. (§ 3051, subd. (b)(3).) The Court of Appeal further stated: "Information from the probation reports prepared for both defendants, the juvenile fitness hearing reports, their pretrial statements to officers, as well as what was provided at the sentencing hearings, would all be available for consideration at the youth offender parole hearing. (§ 3051, subd. (f).) It appears that Barajas and Rodriguez had 'sufficient opportunity to put on the record the kinds of information' deemed relevant to a youth offender parole hearing, although they are not precluded from submitting

8

additional information for review by the parole board. (*People v. Franklin*, *supra*, 63 Cal.4th at pp. 283–284.)" The Court of Appeal thus affirmed the judgment against Rodriguez without remanding the matter to the trial court.

Rodriguez, like Franklin, was sentenced before the passage of Senate Bill No. 260, and he argues that he did not have notice and a sufficient opportunity at sentencing to make a thorough record of factors relevant to his eventual youth offender parole hearing. He contends that the record fails to adequately discuss his level of maturity and character traits at the time of the offense, the impact of his childhood addiction to methamphetamines, the impact of his frayed relationship with his family and the physical abuse inflicted on him by his siblings, his frequent exposure to and victimization by gang violence, and his conduct during his incarceration and how it relates to his potential for rehabilitation.

We agree with Rodriguez that he is entitled to remand for an opportunity to supplement the record with information relevant to his eventual youth offender parole hearing. Although a defendant sentenced before the enactment of Senate Bill No. 260 could have introduced such evidence through existing sentencing procedures, he or she would not have had reason to know that the subsequently enacted legislation would make such evidence particularly relevant in the parole process. Without such notice, any opportunity to introduce evidence of youth-related factors is not adequate in light of the purpose of Senate Bill No. 260. (See *Franklin*, *supra*, 63 Cal.4th at p. 277 ["For those juvenile offenders eligible for youth offender parole hearings, the provisions of Senate Bill No. 260 are designed to ensure they will have a meaningful opportunity for release no more than 25 years into their incarceration."].) On remand, the Court of Appeal shall direct the trial court to provide Rodriguez and the prosecution an opportunity to supplement the record with information relevant to Rodriguez's eventual youth offender parole hearing. (*Franklin*, at p. 284.) In so doing, the trial court may exercise its

9

discretion to conduct this process efficiently, ensuring that the information introduced is relevant, noncumulative, and otherwise in accord with the governing rules, statutes, and regulations.

Rodriguez further contends that his Eighth Amendment claim is not moot because without an adequate opportunity to make a record of youth-related circumstances at the time of his offenses, his eventual parole hearing will not provide him with a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Graham v. Florida* (2010) 560 U.S. 48, 75.) Our directive that Rodriguez receive a remand in this proceeding makes it unnecessary to address this claim. "So long as juvenile offenders have an adequate opportunity to make a record of factors, including youth-related factors, relevant to the eventual parole determination, we cannot say at this point that the broad directives set forth by Senate Bill No. 260 are inadequate to ensure that juvenile offenders have a realistic and meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Franklin*, at p. 286.) We expressed no view in *Franklin*, and we need not express any view here, on whether such a remand is constitutionally required.

**IV.**

In his request to file supplemental briefs, Rodriguez argues that Senate Bill No. 620 (2017–2018 Reg. Sess.), effective January 1, 2018, applies to his case. That legislation amended section 12022.53, subdivision (h) to read: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law." Rodriguez contends that as a consequence of this newly passed legislation, the firearm enhancements imposed on his sentence pursuant to section 12022.53, subdivisions (d) and (e),

10

should be struck and he should be resentenced accordingly. On remand, the Court of Appeal shall direct the trial court to consider the applicability of section 12022.53, subdivision (h) to Rodriguez's sentence.

## CONCLUSION

We reverse Barajas's convictions and remand his case to the Court of Appeal with instructions to enter a judgment of acquittal. We remand Rodriguez's case to the Court of Appeal with instructions to remand to the trial court to provide the parties with an opportunity to supplement the record with information relevant to Rodriguez's youth offender parole hearing and to consider the applicability of section 12022.53, subdivision (h) to his sentence.


**LIU, J.**


**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**BLEASE, J.***

---

\*      Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Rodriguez

_____

**Unpublished Opinion** XXX NP opn. filed 12/20/16 – 5th Dist.
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S239713
**Date Filed:** May 17, 2018

_____

**Court:** Superior
**County:** Stanislaus
**Judge:** Nancy Ashley

_____

**Counsel:**

Cara DeVito, under appointment by the Supreme Court, for Defendant and Appellant Jesus Manuel Rodriguez.

S. Lynne Klein, under appointment by the Supreme Court, for Defendant and Appellant Edgar Octavio Barajas.

Kamala D. Harris and Xavier Becerra, Attorneys General, Dane R. Gillette and Gerald A. Engler, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon, Peter W. Thompson, Rachelle A. Newcomb and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Cara DeVito
9360 West Flamingo Road
No. 110-492
Las Vegas, NV  89147
(702) 240-9074

S. Lynne Klein
P.O. Box 367
Davis, CA  95617
(530) 753-9401

Darren K. Indermill
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 210-7689