Filed 4/23/21 P. v. Juarez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OSMAN ROLANDO GALICIA JUAREZ,<br><br>    Defendant and Appellant. | B304377<br><br>(Los Angeles County Super. Ct. No. BA469086) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Craig J. Mitchell, Judge. Affirmed and remanded with directions.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

Osman Rolando Galicia Juarez appeals the judgment entered following a jury trial in which he was convicted of two counts of sexual intercourse or sodomy with a child 10 years old or younger (Pen. Code,[1] § 288.7, subd. (a); counts 4 & 7), two counts of oral copulation or sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b); counts 5 & 8), and three counts of a lewd act upon a child under the age of 14 (§ 288, subd. (a); counts 3, 6, & 9).[2] The trial court sentenced appellant to two consecutive terms of 25 years to life on counts 4 and 7, plus concurrent terms on the remaining counts of conviction, for a total term of 50 years to life in state prison.

Appellant was 18 years old when he committed multiple nonviolent sex offenses against his half-sister beginning when she was nine. At sentencing, the trial court ruled that because of the nature of his offenses, appellant is ineligible for a youth offender parole hearing under section 3051. Appellant contends the court incorrectly determined that appellant is excluded from early parole consideration based on his youth at the time of his offenses, and the error requires remand for a hearing under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) to preserve evidence for a future youth offender parole hearing in accordance with section 3051, subdivisions (d) through (f). We agree and remand the matter to the trial court for a full hearing for the purpose of affording both parties the opportunity to make a

---

[1] Undesignated statutory references are to the Penal Code.

[2] The jury acquitted appellant on counts 1 (sexual intercourse or sodomy with a child 10 years old or younger, § 288.7, subd. (a)) and 2 (oral copulation or sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b)).

2

record of information relevant to appellant's future youth offender parole hearing.

Appellant further contends that his 50-year-to-life sentence constitutes cruel and unusual punishment under the Eighth Amendment and the California Constitution and therefore must be reversed. We reject the claim based on our Supreme Court's holding in *Franklin* that sections 3051 and 4801, enacted by the Legislature to bring juvenile sentencing in conformity with *Miller*, *Graham*, and *Caballero*,[3] render the constitutional challenge raised by appellant moot. (*Franklin*, *supra*, 63 Cal.4th at p. 268; *People v. Rodriguez* (2018) 4 Cal.5th 1123, 1126 (*Rodriguez*); *People v. Lipptrapp* (2021) 59 Cal.App.5th 886, 891.)

## FACTUAL BACKGROUND

Appellant's mother, Maria, left Guatemala for the United States around 2003, leaving appellant with his grandparents. Appellant was three years old. When he was 17, appellant moved to Los Angeles from Guatemala to live with his mother, Maria's partner, and Maria's two younger children—appellant's half-brother, H.L. (born in April 2010), and his half-sister, S.L. (born in March 2008). Appellant shared a bedroom with H.L. and S.L. H.L. and S.L. shared a bunk bed, and appellant had his own bed across the room.

Appellant admitted touching S.L.'s whole body, including her chest, her anus, and her vagina, every two to three weeks starting in December 2017. On the first occasion, appellant, S.L., and H.L. were watching television. According to appellant, S.L.

---

[3] *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*); *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*); *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*).

lay down next to appellant, and he began to touch her chest and her back. In February 2018, appellant and S.L. were lying on appellant's bed when he touched her vagina with his hand for the first time, and then penetrated her vagina with his penis.

The next incident occurred a few weeks later when appellant returned from a trip to Atlanta. According to appellant, S.L. lay down next to appellant on his bed, and he began touching her and inserted his penis into her vagina. The third time appellant penetrated S.L.'s vagina occurred on Mother's Day in May 2018. On the night of June 21, 2018, appellant penetrated S.L.'s vagina with his penis a fourth time.

Maria had noticed that appellant and S.L. had a very close sibling relationship, but by June 22, 2018, she had become concerned that something was going on between them. The night before, Maria had heard a noise from the children's bedroom, but when she went into the room they appeared to be asleep in their own beds. The next morning, Maria asked S.L. if she had gotten up in the night. S.L. was reluctant to answer, but said no and seemed nervous. Despite her concerns, Maria drove S.L. to school at 8:00 a.m., but returned to pick her up at 9:00 a.m. to take her to the hospital for tests. At the hospital, S.L. revealed to her mother that appellant had touched her inappropriately.

S.L. told a forensic examiner that as she was returning to bed from the bathroom, appellant had grabbed her leg, drew her toward him, and started touching her "private part." She tried to get away, but he pulled her back, took her shorts off, and removed his own shorts and underwear. S.L. continued to struggle and told him to stop, but appellant hugged her and held her "hard" on her arm as he touched her chest, vagina, and anus. Appellant grabbed S.L.'s shoulders, trying to make her face him.

4

He lay on top of S.L. and licked her chest. He put his finger in her vagina, scratching her with his fingernail, and he put his penis in her vagina, which was painful. S.L. remembered that the first time appellant licked her chest was around Christmas when she was nine years old, and she was still nine the first time appellant touched her vagina and put his "middle part" in her "middle part."

At trial, S.L. testified that appellant touched her in ways she did not like. She stated that appellant touched her "private part." But when she was asked for details, she repeatedly said she did not remember because she did not want to get her brother into trouble.

## DISCUSSION

### I. Appellant Is Entitled to a *Franklin* Proceeding

Before imposing a sentence of two consecutive 25-year-to-life terms, the trial court recognized that a youthful offender sentenced to a life term would "normally" have a right to early parole consideration "at the 25-year mark." However, in this case, the trial court believed that "an exception [was] carved out" for "these type[s] of offenses," and appellant would not qualify for a youth offender parole hearing under section 3051. To the contrary, section 3051 applies to appellant without exception.

Section 3051 provides for a youth offender parole hearing to be conducted in the 25th year of incarceration by "the Board of Parole Hearings [(the Board)] for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or younger . . . at the time of the controlling offense." (§ 3051, subd. (a)(1).) The "controlling offense" is the offense for which the longest term of imprisonment was imposed (§ 3051, subd. (a)(2)(B)), which in this case is either count 4 or count 7, based on

the 25-year-to-life sentence imposed for each of those counts (*Franklin*, *supra*, 63 Cal.4th at p. 279). A prisoner eligible for release on parole at a youth offender parole hearing is entitled to such a hearing on the first day of the prisoner's 25th year of incarceration. (§ 3051, subd. (b)(3).)

Early parole consideration under section 3051 is not available to every youth offender. Section 3051, subdivision (h) specifically excludes those offenders sentenced under the Three Strikes law (§§ 1170.12, subds. (b)–(i), 667), the One Strike law (§ 667.61, mandating a life sentence for certain sex offenses committed under specified circumstances), or to life in prison without the possibility of parole for a controlling offense that was committed after the person reached the age of 18.[4] (*People v. Contreras* (2018) 4 Cal.5th 349, 359, 382; *In re Bolton* (2019) 40 Cal.App.5th 611, 617; *People v. Phung* (2018) 25 Cal.App.5th 741, 755.)

None of these exclusions applies to appellant. Appellant has no prior serious or violent felony convictions, and was not sentenced under the Three Strikes law. Nor do appellant's counts of conviction qualify for One Strike sentencing under

---

[4] The constitutionality of subdivision (h) is an issue currently being debated by Courts of Appeal (see, e.g., *People v. Edwards* (2019) 34 Cal.App.5th 183, 197; *In re Woods* (Apr. 2, 2021, B301891) ___ Cal.App.5th ___) and is currently under review in the California Supreme Court (see *People v. Williams* (2020) 47 Cal.App.5th 475, rev. granted July 22, 2020, S262229; *People v. Moseley* (2021) 59 Cal.App.5th 1160, rev. granted Apr. 14, 2021, S267309).

section 667.61,[5] and he was not sentenced under that statute. Further, appellant was not sentenced to life without the possibility of parole.

While conceding that appellant will be entitled to a youth offender parole hearing under section 3051, respondent asserts that remand is unnecessary because appellant already had an opportunity at his sentencing hearing to make a record of information pertaining to his youth-related characteristics and circumstances at the time of the offense to be considered at his eventual parole hearing. To the contrary, although appellant's trial counsel argued for sentencing leniency based on appellant's youth, no evidence of any youth-related factors specific to appellant was presented to preserve a record for a youth offender parole hearing 25 years in the future.

"The Legislature has declared that '[t]he youth offender parole hearing to consider release shall provide for a meaningful opportunity to obtain release' (§ 3051, subd. (e)) and that in order to provide such a meaningful opportunity, the Board 'shall give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity' (§ 4801, subd. (c))." (*Franklin*, *supra*, 63 Cal.4th at p. 283.) In order to allow the

---

[5] Section 667.61 provides that any person who is convicted of committing a lewd or lascivious act in violation of section 288, subdivision (a) or (b), under one or more of the circumstances specified in section 667.61, subdivision (d) or under two or more of the circumstances specified in section 667.61, subdivision (e) shall be punished by imprisonment in the state prison for 25 years to life. None of the circumstances enumerated in section 667.61, subdivision (d) or (e) is present in this case.

7

Board to fulfill its mandate, our Supreme Court requires that youth offenders like appellant be given an opportunity to preserve evidence of youth-related factors to be considered in their eventual parole hearing. (*Id*. at p. 284.)

As *Franklin* observed, the statutory scheme specifically "contemplate[s] that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate the Board's consideration. For example, section 3051, subdivision (f)(2) provides that '[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime . . . may submit statements for review by the board.' Assembling such statements 'about the individual before the crime' is typically a task more easily done at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away. [Citation.] In addition, section 3051, subdivision (f)(1) provides that any 'psychological evaluations and risk assessment instruments' used by the Board in assessing growth and maturity 'shall take into consideration . . . any subsequent growth and increased maturity of the individual.' Consideration of 'subsequent growth and increased maturity' implies the availability of information about the offender when he was a juvenile." (*Franklin, supra,* 63 Cal.4th at pp. 283–284.)

Almost none of the youth-related information envisioned by the court in *Franklin* was presented at appellant's sentencing hearing in this case. The defense submitted no sentencing memorandum, and the People's sentencing memorandum

8

contained no mitigating youth-related evidence.  Appellant's probation report contains no discussion of any youth-related factors and states there were no circumstances in mitigation. Further, although defense counsel brought the court's attention to appellant's recent immigration from a very small town in Guatemala with different social norms, counsel presented no evidence about any other environmental, social, or psychological factors affecting appellant prior to or at the time of the offenses.

The goal of the proceeding envisioned by *Franklin* "is to provide an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c)) in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime 'while he was a child in the eyes of the law.' " (*Franklin, supra,* 63 Cal.4th at p. 284.)  Appellant's sentencing hearing did not meet this goal.  Accordingly, appellant is entitled to a remand for a full *Franklin* evidentiary hearing to enable the parties to make a record of the information contemplated under section 3051.

## II. The Availability of Early Parole Consideration Under Section 3051 Renders Appellant's Constitutional Challenge to His Sentence Moot

Appellant seeks reversal of his 50-year-to-life sentence on the ground that it is cruel and unusual in violation of the Eighth Amendment and the California Constitution.  In *Franklin*, our Supreme Court "held that a juvenile offender's Eighth Amendment challenge to his 50-year-to-life sentence was rendered moot" by the enactment of sections 3046,

subdivision (c), 3051, and 4801,[6] which instituted youth offender parole hearings and made youth offenders like Franklin eligible for such a hearing during their 25th year of incarceration. (*Rodriguez, supra,* 4 Cal.5th at p. 1130; *Franklin, supra,* 63 Cal.4th at p. 280.) In accordance with *Franklin*'s holding on this issue, we reject appellant's claim.

*Franklin* began its analysis of the Eighth Amendment claim with the recognition that the Legislature enacted these statutes with the express purpose of bringing juvenile sentencing into conformity with *Graham*, *Miller*, and *Caballero* by establishing a mechanism by which a person serving a sentence for crimes committed as a juvenile would have an opportunity to obtain release upon showing growth, rehabilitation, and maturity. (*Franklin, supra,* 63 Cal.4th at p. 277; Stats. 2013, ch. 312, § 1.) But the means for obtaining early release upon the requisite showing does not invalidate the original sentence. As *Franklin* explained: "The Legislature did not envision that the original sentences of eligible youth offenders would be vacated and that new sentences would be imposed to reflect parole

---

[6] As mentioned, section 4801, subdivision (c) specifies that in its review of a youth offender's suitability for parole in the context of a section 3051 hearing, the Board of Parole Hearings "shall give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."

Subdivision (c) of section 3046 requires that an inmate found suitable for parole pursuant to a youth offender parole hearing under section 3051 be released regardless of the manner in which the Board of Parole Hearings set release dates pursuant to section 3041, subdivision (a).

eligibility during the 15th, 20th, or 25th year of incarceration. The continued operation of the original sentence is evident from the fact that an inmate remains bound by that sentence, with no eligibility for a youth offender parole hearing, if 'subsequent to attaining 23 years of age' the inmate 'commits an additional crime for which malice aforethought is a necessary element . . . or for which the individual is sentenced to life in prison.' (§ 3051, subd. (h); Stats. 2015, ch. 471.) But section 3051 has changed the manner in which the juvenile offender's original sentence operates by capping the number of years that he or she may be imprisoned before becoming eligible for release on parole. The Legislature has effected this change by operation of law, with no additional resentencing procedure required." (*Franklin*, at pp. 278–279.)

Appellant nevertheless contends that because his 50-year-to-life sentence was unconstitutional *ab initio*, the "existence of a *potential* mechanism for being paroled 25 years into the future" under section 3051 does not moot the Eighth Amendment violation in this case. Our Supreme Court rejected a similar argument in *Franklin*. While an adult offender sentenced to two consecutive 25-year-to-life terms would not be eligible for parole consideration until he or she had served 50 years (§ 3046, subd. (b); *Franklin*, *supra*, 63 Cal.4th at p. 273), a youth offender sentenced in the same manner (who is not otherwise excluded from early parole consideration under section 3051, subdivision (h)) is eligible for parole consideration and a meaningful opportunity for release as though the original sentence were 25 years to life. (*Franklin*, *supra*, 63 Cal.4th at pp. 279–280.) As *Franklin* observed, such a sentence is therefore neither LWOP nor its functional equivalent. (*Franklin*, *supra*, 63

Cal.4th at p. 280.) Indeed, it is tantamount to a sentence of 25 years to life. Accordingly, by operation of section 3051, section 3046, subdivision (c), and section 4801, appellant's constitutional challenge to his sentence is moot.[7]

Finally, appellant asserts that "[p]ushing a first opportunity for parole so far into the future" leaves "no reliable way to measure his cognitive abilities, maturity, and other youth factors when the offense was committed more than 25 years prior." We reject the claim in light of our decision to remand the matter for a "*Franklin*" hearing, at which appellant "may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates [appellant's] culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Franklin, supra,* 63 Cal.4th at p. 284.)

---

[7] Appellant does not argue that a sentence of 25 years to life is unconstitutional or would not be an appropriate sentence under the circumstances of this case, conceding that "[t]he crimes committed in this case were no doubt serious and deserving of a lengthy sentence."

## DISPOSITION

The judgment is affirmed.  The matter is remanded to the trial court to afford both parties the opportunity to make a record of information relevant to appellant's eventual youth offender parole hearing under Penal Code section 3051, as set forth in *People v. Franklin* (2016) 63 Cal.4th 261.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.

13