Filed 8/21/25  P. v. Washington CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAWUAN JAVONYA WASHINGTON,<br><br>Defendant and Appellant. | B336891<br><br>(Los Angeles County Super. Ct. No. MA079441) |

APPEAL from an order of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Reversed and remanded with directions.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Stephanie C. Brenan, Supervising Deputy Attorney General, and Stefanie Yee, Deputy Attorney General, for Plaintiff and Respondent.

_____

Dawuan Javonya Washington appeals from a postjudgment order denying his motion for a proceeding under *People v. Franklin* (2016) 63 Cal.4th 261, 283-284 (*Franklin*) to preserve mitigating evidence for his eventual youth offender parole hearing.  Washington contends, the People concede, and we agree the superior court erred in denying his motion.  We also agree with the People that the superior court has discretion on how the *Franklin* proceeding is conducted, but we disagree that the court may deny an eligible defendant a *Franklin* proceeding entirely.  We reverse and remand for the trial court to conduct a *Franklin* proceeding.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Shooting*[1]

On July 15, 2020 Samahjzea Golden drove her car into a gas station and parked at a gas pump.  Her passenger, Amya Malbrue, exited the car.  Washington, wearing a black hooded sweatshirt and black shorts, and codefendant

_____

[1]    We provide a summary of the facts as set forth in Washington's probation report for background purposes only.  We recognize that in *People v. Gibbs* (February 9, 2024, B329530) (nonpub. opn.), we identified Washington as the shooter based on the testimony of his codefendant, Dwight Antwan Gibbs, after Gibbs pleaded no contest to the attempted second degree murders of Golden and the victim of an unrelated July 14, 2020 shooting.  Whether Washington was the actual shooter or an aider and abettor does not affect whether he is entitled to a *Franklin* proceeding.

Dwight Antwan Gibbs, wearing a red face mask and a red hooded sweatshirt, parked their car behind Golden's car. They exited their car and approached Golden's car. Washington attempted to open the passenger-side door of Golden's car, but it did not open. Gibbs then walked to the driver's side of the car, pulled out a handgun, and, standing less than a foot away from the driver's side window, fired five shots through the glass into the car. After being shot, Golden heard one of the defendants say, "Give me your rings, give me your gold, give me everything!" Washington reached through the broken glass of the driver's side window and grabbed a white purse containing $4,500 and jewelry that he took from Golden's hands, wrist, and neck. Malbrue (a codefendant) walked back to Washington and Gibbs's car and entered the rear seat; the car drove off. Golden later identified the shooter as Gibbs, who was Malbrue's boyfriend. Golden suffered bullet wounds that left her paralyzed.

B.     *The Sentencing*

At the November 1, 2022 sentencing hearing, pursuant to a negotiated plea, the trial court sentenced Washington to an aggregate sentence of 34 years in state prison.[2] The court imposed the upper term of nine years for the attempted murder of Golden (Pen. Code, §§ 664, 187, subd. (a);[3] count 1), plus five years for inflicting great bodily injury causing permanent paralysis (§ 12022.7, subd. (b)), and 20 years for personally and intentionally discharging a firearm (§ 12022.53, subd. (c)). The court also sentenced Washington to a concurrent term of five

---

[2]     Judge Daviann L. Mitchell sentenced Washington.

[3]     Further statutory references are to the Penal Code.

years for a second degree robbery committed on July 14, 2020 (§ 211; count 9). The court dismissed all remaining counts under section 1385 pursuant to the negotiated plea.

C.    *Washington's Motion for a* Franklin *Proceeding*

On December 18, 2023 Washington, representing himself, filed a motion for a *Franklin* proceeding and requested appointment of counsel. Washington argued he was eligible for a youth offender parole hearing during his 15th year of incarceration under section 3051, subdivision (b), because he was sentenced to a determinate term of 34 years in state prison, and he was under the age of 25 when he committed the crimes. He requested a *Franklin* proceeding to preserve the mitigating youth-related evidence for his eventual youth offender parole hearing pursuant to section 1203.01 and *In re Cook* (2019) 7 Cal.5th 439, 452 (*Cook*).

On January 9, 2024 the superior court[4] denied Washington's motion for a *Franklin* proceeding without holding a hearing. The court found Washington "appear[ed] statutorily eligible for a youth offender parole hearing" under section 3051, subdivision (b)(1), because he was 23 years old when he committed the crimes, and he was sentenced to 34 years in state prison. But the court found Washington "was not entitled to a new evidence preservation hearing" because he was sentenced in 2022, well after the enactment of section 3051 and publication of the opinions in *Franklin* and *Cook*. The court reasoned, "At sentencing, through his attorney, [Washington] was given sufficient opportunity to make a record of any information relevant to his eventual youthful offender parole hearing."

---

[4]    Judge Kathleen Blanchard.

4

Washington timely appealed.

## DISCUSSION

A.   Franklin *Proceeding to Preserve Mitigating Youth-related Evidence for Youth Offender Parole Hearing*

Section 3051, subdivision (a)(1), provides for a "youth offender parole hearing" by the Board of Parole Hearings "for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or younger . . . at the time of his or her controlling offense." Where, as here, the defendant is convicted of a controlling offense "when the person was 25 years or younger and for which the sentence is a determinate term," that person "shall be eligible for release on parole at a youth offender parole hearing during the person's 15th year of incarceration. The youth parole eligible date for a person eligible for a youth offender parole hearing under this paragraph shall be the first day of the person's 15th year of incarceration." (*Id.*, subd. (b)(1).) "In assessing growth and maturity, psychological evaluations and risk assessment instruments, if used by the board, shall be administered by licensed psychologists employed by the board and shall take into consideration the diminished culpability of youth as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual." (*Id.*, subd. (f)(1).) In addition, "[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime or the individual's growth and maturity since the time of the crime may submit statements for review by the board." (*Id.*, subd. (f)(2).)

5

In *Franklin, supra*, 63 Cal.4th at pages 283 to 284, the Supreme Court held a defendant who did not have an opportunity to make a record of mitigating "youth-related factors" relevant to a later youth offender parole hearing should have an opportunity to make a record on remand. The court explained that sections 3051 and 4801[5] "contemplate that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate the Board's consideration. . . . Assembling such statements 'about the individual before the crime' is typically a task more easily done at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away." (*Franklin,* at pp. 283-284.)

The Supreme Court in *Franklin* remanded the matter to determine whether the defendant "was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing," and if not, to allow the defendant to "place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution

---

[5]    Section 4801, subdivision (c), provides, "When a prisoner committed his or her controlling offense, as defined in subdivision (a) of Section 3051, when he or she was 25 years of age or younger, the board, in reviewing a prisoner's suitability for parole pursuant to Section 3041.5, shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."

likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Franklin, supra*, 63 Cal.4th at p. 284; see *People v. Rodriguez* (2018) 4 Cal.5th 1123, 1131-1132 [remanding for defendant to supplement record in trial court with information relevant to his eventual youth offender parole hearing].)

Three years after *Franklin*, the Supreme Court in *Cook, supra*, 7 Cal.5th at page 458 held that a juvenile offender with a final judgment could move for a postjudgment proceeding under section 1203.01[6] to present evidence of youth-related factors. The *Cook* court reasoned, "[R]ecognizing the court's authority under section 1203.01 to gather youth offender evidence effectuates sections 3051 and 4801." (*Cook,* at p. 453.) The Supreme Court elaborated, "For inmates like Cook who seek to preserve evidence following a final judgment, the proper avenue is to file a motion in superior court under the original caption and case number, citing the authority of section 1203.01 and today's decision," that "establish[es] the inmate's entitlement to a youth offender parole

---

[6] Section 1203.01, subdivision (a), provides in part, "Immediately after judgment has been pronounced, the judge and the district attorney, respectively, may cause to be filed with the clerk of the court a brief statement of their views respecting the person convicted or sentenced and the crime committed, together with any reports the probation officer may have filed relative to the prisoner. The judge and district attorney shall cause those statements to be filed if no probation officer's report has been filed. The attorney for the defendant and the law enforcement agency that investigated the case may likewise file with the clerk of the court statements of their views respecting the defendant and the crime of which they were convicted."

7

hearing" and "indicate[s] when such hearing is anticipated to take place, or if one or more hearings have already occurred." (*Id.* at p. 458.)  Further, "consistent with *Franklin* and the court's inherent authority, the offender shall have the opportunity to 'place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors.'"  (*Id.* at pp. 458-459.)

　　*Cook* added, "Some offenders who file these postjudgment motions in the trial court may have spent a decade or more in prison.  Some may have even come before the Board for a youth offender parole hearing.  The court may consider whether a *Franklin* proceeding is likely to produce fruitful evidence considering such factors as the passage of time and whether the offender has already benefitted from the factfinding procedures set forth in section 3051, subdivision (f)(1) and (2) with the assistance of appointed counsel (§ 3041.7; Cal. Code Regs., tit. 15, § 2256, subd. (c)).  Additionally, some offenders may choose not to present certain forms of evidence, such as live testimony, or to forgo a *Franklin* proceeding altogether."  (*Cook*, *supra*, 7 Cal.5th at p. 459.)

B.　*Washington Is Entitled to a* Franklin *Proceeding*

　　Washington contends, the People concede, and we agree the superior court erred in denying Washington's motion for a *Franklin* proceeding.  As mandated by *Cook, supra*, 7 Cal.5th at page 458, Washington filed his motion in the superior court under the original caption and case number, citing

section 1203.01 and *Cook*. The People acknowledge that Washington established his entitlement to a youth offender parole hearing under section 3051, subdivision (b)(1), because he was 23 years old when he committed the crimes and he was sentenced to a determinate term of 34 years in state prison.[7] The record does not reflect that Washington had a prior parole hearing or a *Franklin* proceeding.

As discussed, the superior court denied Washington's postjudgment motion for a *Franklin* proceeding because Washington's sentencing occurred after the *Franklin* and *Cook* decisions, and thus Washington had an opportunity through his attorney to make a record at sentencing of information relevant to his eventual youthful offender parole hearing. But *Cook* specifically provides for the filing of a postjudgment motion under section 1203.01, and nowhere in *Cook* is there a requirement that a defendant file the motion at the time of sentencing.

Although the People concede it was error to deny Washington's motion, they contend the matter should be remanded for the trial court to consider whether a *Franklin* proceeding "is warranted," relying on *People v. Howard* (2021) 74 Cal.App.5th 131, 145 (*Howard*). *Howard* is distinguishable. In that case, the defendant introduced youth-related evidence at

---

[7] Although Washington in his motion did not state the anticipated date of his youth offender parole hearing or whether he had a prior parole hearing (*Cook, supra*, 7 Cal.5th at p. 458), this is not a mandatory pleading requirement to initiate a *Franklin* proceeding. (See *People v. Lipptrapp* (2021) 59 Cal.App.5th 886, 896 ["A trial court does not need to know the date of the next parole hearing, or the dates of prior hearings, to begin overseeing *Franklin* proceedings. The date is simply a logistical consideration."].)

9

a prior parole hearing, including about his parents' neglect, bullying by his peers in elementary school, and his use of alcohol and drugs. (*Id.* at p. 145.) A year later the defendant filed a motion for a *Franklin* proceeding, which the trial court denied on the basis the parole board had already considered the evidence. (*Howard*, at p. 149.) The Court of Appeal held the trial court "prematurely denied [the defendant's] request" because the "motion met the legal requirements to initiate the *Franklin* process," and thus "the court should have provided [the defendant] an opportunity to explain the evidence he sought to introduce before determining whether a *Franklin* proceeding was warranted." (*Ibid.*)

Unlike in *Howard*, where the defendant introduced youth-related evidence at an earlier parole hearing, Washington did not present any youth-related evidence at sentencing, and he did not have a prior parole hearing. Moreover, the court in *Howard* clarified that "given the low threshold on such motions, at a minimum, the court should have afforded [the defendant] the opportunity to offer proof of any relevant, noncumulative evidence he sought to preserve." (*Howard, supra*, 74 Cal.App.5th at p. 153.) Here, presentation of cumulative evidence is not an issue.

Although Washington is entitled to a *Franklin* proceeding, the superior court has discretion to set the parameters of the proceeding. As the Supreme Court explained in *Cook*, "Although *Franklin* mandates an opportunity for evidence preservation, the trial court may 'exercise its discretion to conduct this process efficiently, ensuring that the information introduced is relevant, noncumulative, and otherwise in accord with the governing rules, statutes, and regulations.' [Citation.] The court may, for

example, require an offer of proof regarding the evidence the offender seeks to present, so that it can determine whether such evidence is relevant to youth-related factors and meaningfully adds to the already available record.  It may also determine whether testimony is 'appropriate' (*Franklin, supra*, 63 Cal.4th at p. 284), or if other types of evidentiary submissions will suffice." (*Cook, supra*, 7 Cal.5th at p. 459.)

## DISPOSITION

The order denying Washington's motion for a *Franklin* proceeding is reversed.  Upon remand, the superior court shall conduct a *Franklin* proceeding consistent with this opinion.


FEUER, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.