Filed 8/24/21  P. v. Esparza CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>DANIEL ESPARZA,<br><br>　　　Defendant and Appellant. | B305417<br><br>(Los Angeles County<br>Super. Ct. No. PA049963) |

　　　APPEAL from orders of the Superior Court of Los Angeles County.  Daniel B. Feldstern, Judge.  Affirmed.

　　　Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2006, a jury convicted defendant and appellant Daniel Esparza of second degree murder (Pen. Code, § 187, subd. (a); count 1)[1] and found true the allegations that he personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (b) through (e) and that the offense was committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1). (*People v. Esparza* (Sept. 5, 2007, B194326) [nonpub. opn.], at p. 2 (*Esparza*).) He was sentenced to 40 years to life in prison. (*Ibid.*) On direct appeal, we affirmed the judgment. (*Id.* at p. 11.)

Defendant thereafter filed two postjudgment motions. First, on April 12, 2019, defendant filed a petition for resentencing pursuant to section 1170.95. The trial court denied that petition on the grounds that defendant was not convicted of second degree murder under either a theory of felony murder or the natural and probable consequences doctrine. The trial court also determined that defendant was the actual killer based upon the jury's finding that he personally discharged the firearm causing death.

Second, on November 18, 2019, defendant moved for a *Franklin*[2] hearing in order to make a record of mitigating evidence relating to his youthfulness at the time of the crime. The trial court summarily denied defendant's motion without prejudice on the grounds that it did not provide any offer of proof of relevant evidence, and found that it was doubtful that a *Franklin* hearing would "yield useful information for a future parole hearing."

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).

Defendant timely appealed both orders.  Regarding the denial of his section 1170.95 petition, defendant argues that he was denied effective assistance of counsel at the resentencing hearing.  Regarding the denial of defendant's request for a *Franklin* hearing, defendant argues that the trial court erroneously denied his request.

We are not convinced by defendant's arguments.  Accordingly, we affirm the trial court's orders.

## FACTUAL BACKGROUND

"At approximately 9:00 or 10:00 p.m. on May 10, 2002, Manuel Contreras (Contreras) went to a party held in the backyard of a residence in Pacoima.  An announcement was made at approximately 1:00 a.m. that the party was over, and the guests proceeded to leave.  As Contreras left with some friends, he saw 10 to 15 men who appeared to be gang members standing at the gate.  Contreras and his friends were all wearing Los Angeles Dodger baseball caps.  The group of gang members 'hit up' Contreras's friends, and Contreras asked the men what the problem was.  The gang members asked Contreras if he and his friends were from 'San Fer,' which was a gang in the San Fernando Valley.  Contreras replied, 'No, we don't gang-bang.'  Members of the group called out 'AGL,' which stood for Astoria Garden Locos, another Valley gang." (*Esparza, supra*, B194326, at p. 2.)

As Contreras began to walk away, one of the gang members snatched Contreras's baseball cap from his head.  When one of the gang members asked Contreras if he wanted to come and get it, Contreras decided to forget it and go home. (*Esparza, supra*, B194326, at pp. 2–3.)

As Contreras left, one of the gang members punched him from behind.  A fight ensued.  At one point, Luis Rodriguez

(Rodriguez) intervened for Contreras. Contreras then heard two to four gunshots. When the shooting stopped, Contreras got up and ran away. (*Esparza*, *supra*, B194326, at p. 3.)

Rodriguez died from a gunshot wound to the abdomen. (*Esparza*, *supra*, B194326, at p. 3.) The fatal wound was caused by a copper-jacketed, lead-core bullet measuring nine millimeters in diameter. At the shooting scene, police recovered two .40-caliber spent cartridges across the street from where Rodriguez's bloody clothing had been left. They also recovered two spent nine-millimeter cartridges at a spot 210 feet south of the .40-caliber cartridges. (*Ibid.*)

During its investigation of the crime, police interviewed Orlando Chavez, a former AGL member who was at the party when the fighting began. "When he heard shots, he jumped over a wall. While crossing the street, he saw the gunman." (*Esparza*, *supra*, B194326, at p. 4.) He identified defendant from a photographic lineup as the shooter, although at trial he recanted his prior identification. (*Ibid.*)

"On June 3, 2002, defendant and Jesus Romero (Romero) were arrested in a car. In the center console, police found a weapon. In this June 2002 incident, defendant admitted in court that he personally used the gun. Detective [Ronald] King learned of defendant's and Romero's arrest and the fact that a gun was found in the car they occupied. Detective King requested that the gun be compared with the ballistic evidence recovered at Rodriguez's shooting. The same gun was later admitted into evidence in the instant case." (*Esparza*, *supra*, B194326, at p. 4.)

"Starr Sachs (Sachs), a firearms examiner with the Los Angeles Police Department, identified the handgun recovered during defendant's June 2002 arrest, as a semiautomatic Glock.

4

The Glock uses .40-caliber Smith and Wesson ammunition. Sachs testified that the .40-caliber cartridges whose cases were found at the scene were fired from the Glock. The bullet recovered from the victim was consistent with either a .40-caliber Smith and Wesson or a 10 millimeter. The bullet was not marked well enough to confirm or eliminate it as having been fired from the Glock. The Glock will not fire 10-millimeter cartridges, only .40 caliber ones, even though the two types have the same diameter. A smaller bullet, such as a nine millimeter, might fire from the Glock." (*Esparza, supra*, B194326, at p. 4.)

## PROCEDURAL BACKGROUND

I. *Section 1170.95 Petition*

A. <u>Defendant's petition</u>

On April 12, 2019, defendant filed a section 1170.95 petition requesting resentencing. He asserted, inter alia, that he was convicted of murder pursuant to the felony murder rule or the natural and probable consequences doctrine and that he could not now be convicted of murder because of changes made to sections 188 and 189. He did not check the box indicating that he was not the actual killer.

B. <u>The People's opposition</u>

The People opposed the petition on the grounds that defendant was convicted of murder with express malice as the actual killer who personally used a firearm. In addition, the trial court's instructions to the jury demonstrated that it had not been instructed with principles of aiding and abetting, natural and probable consequences, or felony murder.

C. <u>Defense counsel declines to file a reply brief</u>

Counsel was appointed to represent defendant. On January 24, 2020, defense counsel appeared in court, announced an office review of defendant's case had been conducted, and

stated that counsel had elected not to file a reply to the People's opposition based upon defendant's ineligibility for relief as the actual shooter.

  D. <u>Trial court order</u>

  On February 25, 2020, the trial court denied defendant's petition on the grounds that he had not been convicted under either a theory of felony murder or the natural and probable consequences doctrine.  The trial court also relied upon the fact that defendant was the actual killer based upon the jury's finding that he personally discharged the firearm causing death.

II. *Motion for a <u>Franklin</u> Hearing*

  On November 18, 2019, defendant moved for a *Franklin* hearing in order to make a record of mitigating evidence relating to his youthfulness at the time of the crime.  His supporting declaration indicated that he was 20 years old at the time of offense and was eligible for a youthful offender hearing in or around 2026.

  On January 30, 2020, the trial court summarily denied defendant's motion.  In its order, the trial court indicated that such motions "should contain an offer of proof, or the types of evidence that an offender believes to be relevant for his . . . motion, and . . . explain what, if any, alternative efforts the defendant has made to gather information pursuant to Penal Code § 3051(f)," which proffers were "particularly relevant and necessary in cases when substantial time has passed, as is [this] case here."  Thus, it denied the motion without prejudice "as it lacks any offer of proof of relevant evidence to justify a hearing and does not include what efforts, if any, the defendant has made to make his record pursuant to Penal Code § 3051(f)."  It further noted that it was "doubtful that a *Franklin* hearing [would] yield useful information for any future parole hearing" "given the

defendant's current age and the substantial time that has passed since the date of his offense[.]")

On March 9, 2020, defendant filed a notice of appeal from the order denying his motion for a *Franklin* hearing.

## DISCUSSION

### Defendant's Section 1170.95 Petition

I. *Standard of Review*

We review the trial court's order de novo. (See *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 [application of law to undisputed facts]; *A.S. v. Miller* (2019) 34 Cal.App.5th 284, 290 [statutory interpretation].)

II. *Relevant law*

Section 1170.95 provides a mechanism whereby people "who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973.)

In order to obtain resentencing relief, the petitioner must proceed through section 1170.95's separate steps. (*People v. Lewis* (July 26, 2021, S260598) ___ Cal.5th ___ [2021 Cal.LEXIS 5258] (*Lewis*).) First, a defendant must file a facially sufficient section 1170.95 petition. The petitioner must aver that he is eligible for relief because (1) an accusatory pleading was filed against him allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he was convicted of first or second degree murder; and (3) he could not be convicted of murder as a result of the recent amendments to sections 188 and 189. (§ 1170.95, subds. (a)(1)-(3), (b)(1)(A).)

7

"Where the petition complies with [these] requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief.  [Citation.]" (*Lewis, supra,* ___ Cal.5th ___ [2021 Cal.LEXIS 5258], at p. *7.) The trial court may rely on the record of conviction in determining whether the prima facie showing has been made. (*Id.* at p. *29.)  "'[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition,"'" then the trial court must dismiss or deny the petition. (*Lewis, supra,* at p. *31; see also *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328–333 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 57–58 (*Cornelius*), review granted Mar. 18, 2020, S260410.)  As is relevant to the issues in this appeal, a disqualifying factor includes a petitioner that the jury found was the actual killer. (*Cornelius, supra,* at p. 58; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674–675 (*Edwards*), review granted July 8, 2020, S262481; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 896 (*Tarkington*), review granted Aug. 12, 2020, S263219.)

Only if the trial court determines that the petitioner has made a prima facie showing of entitlement to relief must it issue an order to show cause.  (§ 1170.95, subd. (c).)

III.  *The trial court properly denied defendant's petition for resentencing*

A.  <u>Defendant was ineligible for resentencing relief</u>

The trial court properly denied defendant's petition for resentencing because he was ineligible for the relief as the actual shooter.  His record of conviction shows that the only theory of liability for murder on which the jury was instructed was second degree murder with malice aforethought pursuant to CALCRIM

8

No. 520. The jury was not instructed on either the felony murder or natural and probable consequences doctrine.

Furthermore, the jury found true the allegation that defendant personally and intentionally discharged a firearm causing great bodily injury or death under section 12022.53, subdivision (d). While a true finding on this enhancement, by itself, may not necessarily indicate that the defendant was the actual killer, it does here given that there was no theory of vicarious liability offered that would have rendered defendant eligible for relief. (See *People v. Offley* (2020) 48 Cal.App.5th 588, 594, 598–599.)

And, in our prior opinion, we specifically held that "Chavez's identification of defendant as the shooter was sufficient substantial evidence to sustain the conviction." (*Esparza, supra*, B194326, at p. 8.)

Because the record of conviction establishes that defendant was ineligible for relief as a matter of law, the trial court properly denied his petition for resentencing. (See, e.g., *Verdugo, supra*, 44 Cal.App.5th at p. 329; *Edwards, supra*, 48 Cal.App.5th at pp. 674–675; *Tarkington, supra*, 49 Cal.App.5th at pp. 896–898.)

B. <u>Defendant did not demonstrate that he was denied effective assistance of counsel</u>

Regardless, defendant has not demonstrated that he received ineffective assistance of counsel. To establish ineffective assistance of counsel, "'"a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. [Citation.]"'" (*People v.*

*Rices* (2017) 4 Cal.5th 49, 80.) "If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient." (*In re Crew* (2011) 52 Cal.4th 126, 150; see *Strickland v. Washington* (1984) 466 U.S. 668, 697 ["[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"].)

Here, defendant cannot establish either that defense counsel's performance was deficient or that he suffered any prejudice as a result of the alleged poor performance in that no reply brief was filed. Defense counsel was not required to file a reply brief (§ 1170.95, subd. (c)), let alone one that would have advanced a meritless argument simply to avoid being called ineffective by appellate counsel (*People v. Cunningham* (2001) 25 Cal.4th 926, 1038). After all, as set forth above, the record of conviction indisputably shows that the People prosecuted defendant as the actual killer, and he was convicted as such.[3]

**Defendant's Motion for a *Franklin* Hearing**

I. *Relevant law*

"[T]he California Legislature passed Senate Bill No. 260 (2013-2014 Reg. Sess.), which became effective January 1, 2014, and enacted sections 3051, 3046, subdivision (c), and 4801, subdivision (c), to provide a parole eligibility mechanism for juvenile offenders." (*People v. Perez* (2016) 3 Cal.App.5th 612, 618.) "In October 2015, the Legislature amended section 3051, and effective January 1, 2016, anyone who committed his or her

---

[3] It follows that counsel's concession that defendant was the actual shooter does not amount to an argument against his client.

controlling offense before reaching 23 years of age [became] entitled to a youth offender parole hearing. (§ 3051, subd. (a)(1), amended by Stats. 2015, ch. 471, § 1.)" (*People v. Perez, supra*, at p. 618.) Under the revised section 3051, the Board of Parole Hearings "shall complete all youth offender parole hearings for individuals who were sentenced to indeterminate life terms and who [became] entitled to have their parole suitability considered at a youth offender parole hearing on January 1, 2016, by July 1, 2017." (§ 3051, subd. (i)(2)(A).)

In *Franklin, supra*, 63 Cal.4th 261, a 16-year-old defendant shot and killed another teenager and was eventually convicted and sentenced to life in prison with the possibility of parole in 50 years. (*Franklin, supra*, at p. 268.) On appeal, he challenged his sentence as a violation of the Eighth Amendment. While his appeal was pending, the Legislature enacted sections 3051 and 4801 to provide a parole hearing during the 25th year of incarceration for certain juveniles sentenced as adults. Because the defendant in *Franklin* was entitled to such a hearing, the Supreme Court determined that his Eighth Amendment challenge was moot. (*Franklin, supra*, at pp. 276–277.) The *Franklin* court remanded "the matter to the trial court for a determination of whether [the defendant] was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing." (*Id.* at p. 284; see also *People v. Rodriguez* (2018) 4 Cal.5th 1123, 1131–1132 [remanding the matter to allow the offender to make a thorough record of factors relevant to his eventual youth offender parole hearing].)

Thereafter, our Supreme Court in *In re Cook* was tasked with determining "whether a sentenced prisoner whose conviction is final can seek the remedy of evidence preservation and, if so,

11

by what means." (*In re Cook* (2019) 7 Cal.5th 439, 446–447 (*Cook*).)  It held that the proper avenue to seek a *Franklin* proceeding is through section 1203.01, which "provides that, postjudgment, the trial court may generate, collect, and transmit information about the defendant and the crime to the Department of Corrections and Rehabilitation." (*Cook*, *supra*, at p. 447.)

Thus, "consistent with *Franklin* and the court's inherent authority, the offender shall have the opportunity to 'place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing.'" (*Cook*, *supra*, 7 Cal.5th at p. 458.)

That said, "[a]lthough *Franklin* mandates an opportunity for evidence preservation, the trial court may 'exercise its discretion to conduct this process efficiently, ensuring that the information introduced is relevant, noncumulative, and otherwise in accord with the governing rules, statutes, and regulations.' [Citation.]  The court may, for example, require an offer of proof regarding the evidence the offender seeks to present, so that it can determine whether such evidence is relevant to youth-related factors and meaningfully adds to the already available record." (*Cook*, *supra*, at p. 459.)  "Finally, *Franklin* emphasized that the purpose of the proceeding was to allow the offender to assemble evidence 'at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away.' [Citation.]" (*Cook*, *supra*, at p. 459.)  Thus, trial courts "may" consider whether a *Franklin* proceeding is unnecessary because it will not produce "fruitful evidence." (*Cook*, *supra*, at p. 459.)

II. *Analysis*

Applying these legal principles, we conclude that the trial court did not err by denying defendant's motion without prejudice.  By the time of defendant's application for a *Franklin* hearing, defendant had been incarcerated for more than 17 years (since his arrest in 2002).  The likelihood of being able to find relevant materials relating to his youth is in doubt.  And, his bare-bones request for a *Franklin* hearing did not so much as hint as to what kind of information he could gather and enter into the record during the hearing.  As *Cook* allows the trial court to demand an offer of proof (*Cook, supra,* 7 Cal.4th at p. 459), the denial without prejudice[4] against the filing of a new request that included such an offer of proof was certainly within the trial court's authority.  (See, e.g., *Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th 1007, 1015 ["Denial of a motion without prejudice impliedly invites the moving party to renew the motion at a later date, when he can correct the deficiency that led to the denial"].)

---

[4]     In neither his opening brief nor his reply brief does defendant address the fact that the motion was denied without prejudice.

13

# DISPOSITION

The trial court's orders denying defendant's section 1170.95 petition and his request for a *Franklin* hearing are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT